## Magruder and Nichols *v.* Stewart's Administrators.

Where B. by his will bequeathed to his daughter A. a life estate in certain slaves, with directions that after her decease, they should go to the gross estate, and no further disposition was made of the slaves by the will, it was held that on the death of the testator, A. did not become the absolute owner by the merger of the particular estate and the remainder; but that on the death of A. her heirs were entitled to the slaves.

The statute of limitations does not bar the remainder man in slaves, until six years after the termination of the particular estate.

The husband acquires by marriage an absolute right to all the personal property of the wife, and may sue for it in his own name.

IN error from the circuit court of the county of Claiborne.

Thomas B. Magruder and Joseph Nichols instituted an action of *detinue* in said circuit against James Stewart, for the recovery of certain negroes; Stewart died before the suit was determined, and it was revived against his administrators.

The negroes sought to be recovered in this action were claimed by the plaintiffs in right of their wives, who are the only heirs of William Brocus, Senr. The defendants pleaded the general issue and the statute of limitations, and had a verdict in their favor. The plaintiffs moved for a new trial, which being refused, they took their exceptions and brought the case up by a writ of error.

It appeared that Brocus made a will, probated in 1805, by which he bequeathed to his only daughter, Ann, a life estate in these negroes, and the wives of the plaintiffs are the descendants of Ann. They however, did not claim under the will, but as heirs to Brocus, asserting that their right as such accrued after the termination of the life estate.

That clause of the will of Brocus by which the negroes were bequeathed to Ann, is in these words: "I give and bequeath to my only daughter Ann, so long as she may live, for the support of herself and children, the plantation whereon I now live, with negroes Pitcher, Jimbo, Charlotte, Mary, &c., and when it may please the Almighty that her dissolution shall take place, I desire

that the before mentioned seven negroes, &c. shall revert to gross estate, and be disposed of as hereinafter set forth." From this, it would appear that the testator had in mind a further specific disposition of the negroes after the termination of the life estate, but no other was made by the will.

Testimony was introduced to prove the death of Anne in 1831.

It further appeared that Anne, the daughter of the testator Brocus, had been married three times, first to one Brashear, by whom she had one child only, who was a daughter, who was intermarried with one Arthur Carney, and had issue one child only, to wit,—Elizabeth, who intermarried with Joseph Nichols, one of the plaintiffs, and is still living. The second marriage of Anne was with one Harrington, by whom she had issue one child only, a daughter, who intermarried with Thomas B. Magruder, the other plaintiff, and is also living. The third marriage of Anne, the daughter of said Brocus, was with one Tabor, by which marriage there were no children, and said Tabor is now dead.

The legitimacy of said heirs was proved by reputation only.— It was also proved by a witness, who swore only from general reputation, that William B. Minor and Stephen Minor, were illegitimate children of Anne, born before her first marriage.

By an item in the will of said Brocus, a specific bequest was made by him to William B. and Stephen Minor, in which he styled them his grand-sons.

It was established in proof that four of the slaves were in possession of the defendant. It further appeared in evidence that six years had not elapsed from the decease of Anne Tabor, until the commencement of this suit, she having died in July, 1831, and the writ in this case was issued in March, 1836.

After the evidence was closed, and argument had, the plaintiffs, by their counsel, asked the court to charge the jury as follows, to wit:—

1. That marriages and births, in an action for *detinue,* may be proved by general reputation and report.

2. That the plaintiffs' right of action did not accrue until the death of Anne Tabor, to whom a life estate in said negro Mary was given by the will of said Brocus, and that if the plaintiffs

brought their action within six years after that time the statute of limitations will not bar their recovery.

3. That the statute of limitations does not bar an action of *detinue* until six years have elapsed after the right of action has accrued.

4. That if the right of action to said negroes accrued during the coverture, the husbands have properly sued alone.

The court gave the first and third instructions, as asked by the plaintiffs, and refused the second and fourth. In lieu of the second, the court charged the jury that if they believed Anne Tabor was the only child of William Brocus, that then the life estate given her by the will of William Brocus was merged in her right as heir, and that the entire property in said negroes was vested in her on the death of said testator.

The defendants then asked the court to charge the jury as follows, to wit:

1. That unless the jury believe, from the testimony, that said slaves were in possession of the defendants subsequent to the time when the plaintiffs' title accrued, they must find for the defendants.

2. That when legatees are recognised in a will as legitimate children, they cannot, by hearsay, be proven to be illegitimate by persons claiming under said will.

3. That if the jury believe, from the testimony, that there are other persons who are interested as joint owners with said plaintiffs in this action claimed, they must be joined with the plaintiffs in this action, and the plaintiffs cannot sue alone, and the jury must find for the defendants.

4. That if the title of plaintiffs to said slaves did not accrue within six years next before the commencement of this suit, they must find for the defendants.

5. That unless the jury believe from the testimony, that Mrs. Carney, the mother of Mrs. Nicholls, through whom one of the plaintiffs claim title, died before her mother Anne Tabor, and that her husband, Mr. Carney, died before her, or has since died without other heirs than the plaintiffs and their wives, the said Carney or his other heirs should have been parties to the action, and in that case the jury must find for defendants.

All of which instructions the court gave.

The court further instructed the jury in the following words, to wit: If William B. and Stephen Minor are interested in the gross estate of William Brocus, they should be joined, and my construction of the will is, that they are interested.

The jury then retired, and after remaining out some time, returned to the court room and stated they could not agree whether the wives should be joined in this action or not. The court told them the wives should have joined in this action. Whereupon the jury retired again and soon returned with a verdict in the following words, to wit: " We the jury find for the defendants."

Whereupon on the      day of the term aforesaid, the plaintiffs moved the court, through their counsel, to set aside the verdict, and to award a new trial, for the following reasons, to wit:

1. Because the verdict is contrary to law and evidence.

2. Because the court erred in refusing the second and fourth instructions, asked by the plaintiffs, and in giving the instruction above set out, in lieu of the second asked by plaintiffs.

3. Because the court erred in telling the jury when they returned into court for instruction, that the wives of plaintiffs ought to have joined in the action.

4. Because the court erred in giving the first, second and fifth instructions asked by defendants' counsel.

The overruling this motion is the error assigned.

Chaplain for plaintiffs in error.

The first error assigned is that court erred, in refusing second and fourth instructions, as asked by plaintiffs' counsel.

Second instruction in these words, " That the plaintiffs' right of action did not accrue until the death of Anne Tabor, to whom a life estate in said negro Mary was given by the will of Brocus, and that if the plaintiffs brought their action within six years after that time, the statute of limitations will not bar their recovery."

The court ought to have given this instruction, because certainly no action could be brought for the negroes, until Anne's death, as she was entitled to them until that time. When she died in 1831, then was the first moment they could have sued, and if

they have sued within six years from that time, the statute does not bar.

The fourth instruction of plaintiffs, which was likewise refused by the court, is in these words: "That if the right of action to said negroes accrued during the coverture, the husbands have properly sued alone."

The court ought to have given this instruction. Reeve's Domestic Relations, Bacon & Turner, chap. 10, p. 128, it is laid down; "as to those choses that came to the wife before marriage, he has no election to treat them as his own; they belong to his wife, and must be sued for in her name, as well as his; as to those which came to her after marriage, he has election to treat them as his own or not, and he may sue in his own name, or he may join his wife."

Now the plaintiffs' wives claim an interest in the said negroes, as heirs of Wm. Brocus; they claim their heirship through their mother Anne; they are not *heirs* until their mother be *dead;* the negroes do not revert to gross estate until Anne's death; Anne's children cannot claim as heirs to Brocus, until her death. The plaintiffs' wives do claim under the will, they claim as heirs; the first moment they were *heirs* of Wm. Brocus was in 1831, when their mother died; they were married at that time, and consequently they were "choses coming to the wife after marriage."

The second error assigned, is that the court gave the following *charge* in lieu of the second asked by plaintiffs.

"If the jury believe Anne Tabor was the only child of Wm. Brocus, then the life estate given her by the will of Wm. Brocus was merged in her right as heir; and the entire property in said negroes was vested in her, on the death of said testator."

We think this instruction cannot be law; we know of nothing to prevent the bequeathing of life estate in negroes; it was not giving a life estate to the same person who would take the remainder. The negroes did not revert to gross estate until Anne's death, and when *dead* she could not be *heir* to Brocus. The life estate and remainder could not meet in same person by possibility. It is of no consequence that her children are the heirs; they claim as the heirs of Brocus, deriving their relationship through her.

3d error assigned, is, that court gave the 1st, 2nd, and 5th instructions asked by defendants' counsel.

That the court erred in giving first.   See ——

The 2nd instruction is not applicable to the case.

The 5th instruction is not law.   It instructed the jury to find for the defendants, unless they believe Mrs. Carney, the mother of Mrs. Nichols, died before her mother Anne; and that her husband Carney, died before her, or has since died without other heirs than the plaintiffs and their wives.

Now whether Mrs. Carney died before or since her mother, is of no consequence, her child Mrs. Nichols, would equally represent her, and get her portion as heir of Brocus.   And if Carney were now living, he could have no interest, as his wife is dead; because claiming in right of his wife, he must reduce into possession during the coverture, or his hopes are at an end.

4th error assigned, is, that the court undertook, unasked, to tell the jury that Wm. B. & Stephen Minor were interested in the gross estate of Wm. Brocus.   Wm. B. & Stephen Minor were illegitimate children of Anne, born before marriage.   (See testimony of T. D. Jeffers, page 11.)

A bastard cannot inherit to any person; he can no more inherit to his mother than to his father.   The reason is not founded on the uncertainty of knowing the relationship, but on the policy of discouraging illicit intercourse between the sexes.   See Reeves Dom. Rel. Parent and child, chap. 8, page 274.

5th error assigned, and 6th, have been necessarily disposed of by considering the other errors.

We think the judgment must be reversed.

Clark, for defendants.

The motion for a new trial was not made before judgment was delivered; and as no motion was made to set aside the judgment, it was not erroneous to refuse a new trial.

From the record, it appears that the trial was on the 10th of December, and the bill of exceptions does not appear to have been tendered until five days thereafter, and after the overruling of the motion for a new trial.   This court, therefore, will not take notice of the bill of exceptions.

But if the court does look into the bill of exceptions, yet it will not reverse the judgment, and order a *venire de novo*, if it appear from the record that the verdict is not contrary to law and evidence. And such is the case. The plaintiffs claim the said slaves, in right of their wives, as the only heirs at law of William Brocus, deceased. The will of William Brocus, introduced as evidence by the plaintiffs, shows that William and Stephen Minor were also heirs of said Wm. Brocus, for in his will he calls them his "grand-sons," and the plaintiffs cannot controvert their own testimony, especially when contained in a will under which they claim; much less to prove by reputation and rumor the illegitimacy of acknowledged heirs. The bill shows that Wm. Minor is still living; he should, therefore, have been joined in the action, if the action could be brought by the *heirs.*

But the said slave Mary was the absolute property of Anne Brocus, and the statute commenced running in her life-time.— She was the sole heir of Wm. Brocus. The will gave her a life estate, and she had the reversion as heir. Her life estate was therefore merged in her estate as heir, or she took by descent, and not by the will. 2 Coke on Litt. 526, note *k.* And if the statute commenced running in her life-time it must bar, for the defendant has had them in possession more than six years. This appears from the fact that two of them, valued at $800 and $900, and yearly hire at $130, were born in his possession.

If the remainder was not in said Anne, and said slaves became again part of the estate of Wm. Brocus, it must have been vested in his executors, and suit to recover it should have been in their names.

Even if the property in said slaves vested in the heirs of Wm. Brocus, on the death of his daughter Anne, it does not appear that Mrs. Carney, the mother of Mrs. Nichols, who, in the language of the witness, "died many years ago," died before her mother, the said Anne; and as her husband, Mr. Carney, survived her, he has the same interest in the said slaves, in right of his wife, with defendant Magruder, and he or his representatives should have been joined.

But if the wives of plaintiffs are entitled to said slaves, they should have been joined as parties. The said property never

[Magruder and Nichols *v.* Stewart's Administrators.]

having been reduced to possession by their husbands, was a chose in action which, if the wives should survive, will survive to them; and in all cases where the right of action survives to the wife, she must be made a party. 3 Haywood's Tenn. Rep. 252; 1 Bacon's Abridgment, 499.

On the plea of limitations and replication, that the cause of action did accrue within six years, it is necessary that it should not only appear that the plaintiffs' right of action accrued within six years, but that it accrued against the defendant. Unless, then, the plaintiffs show that the slaves were in the possession of the defendant in that time, they cannot recover. The right of possession and property must be in one person, at the same time that possession is in another, to cause a right of action. Now the testimony of J. F. Stuart is, that he has seen the said slaves in possession of defendant, but at what time it does not appear. It was no doubt in the life-time of Mrs. Anne Brocus, as he knows that two of them were born on the plantation, and of the value above mentioned. The testimony of N. M. Stuart, that he saw them on the plantation of defendant in 1837, must stand for nought, as that was subsequent to the commencement of the action and to the death of defendant.

Whatever may have been the charges of the court, the testimony, which is all in the bill of exceptions, justifies the verdict of the jury; and plaintiffs cannot recover, according to their own showing, if a new trial were granted.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The court was asked to charge the jury, "that the plaintiffs' right of action did not acrue until the death of Anne Tabor, to whom a life estate in the said negro, Mary, was given by the will of said Brocus, and if the plaintiffs brought their action within six years after that time, the statute of limitation will not bar their recovery." This the court refused to give, and substituted in lieu thereof the following, to wit:—That if they believed Anne Tabor was the only child of William Brocus, that then the life estate given her by the will, was *merged* in her right as heir, and that the entire property was vested in her at the death of said testator.

It must be undeniably true that if the charge given was correct, then that which was asked was properly refused, because the heirs of Brocus as such could have no right whatever to the negroes. This point must therefore be disposed of before any other can properly arise, and the only inquiry involved in it, is as to the proper application of the doctrine of *merger*, to the title of Anne Tabor. A merger takes place when a greater and a less estate coincide and meet in the same person, without any intermediate estate. 2 Black. Com. 177. It is a term which is applied in the acquisition of title to real estate, but we need not stop to enquire whether it be exclusively applicable to things real; many of the marked distinctions which were formerly held to exist between the two kinds of property are now giving way, and it will not be denied that a merger may take place in the title in things personal. But admitting that it is a doctrine, applicable as well to personal as to real property, yet the state of case before the court was not such as to justify the charge. A *merger* is the mere operation of law, and cannot take place to the prejudice of creditors, infants, legatees, or distributees. 4 Kent, 101. The law is not supposed to operate prejudicially. To sustain it in this case would be manifestly prejudicial to the heirs.

Brocus gave to his daughter a life estate. If that bequest was operative, she could not dispose of the property for a longer period than for her life, and this protected the remainder for the heirs at law; but if her life estate was merged in her right as heir, she had an absolute right to the property, and could dispose of it to the prejudice of her own children, who became heirs at her death. Let it be remembered, too, that besides the two illegitimate children, she had also two legitimate daughters at the time Brocus died, for whom no specific provision was made, and it was competent for the testator to provide for them in this way. Whether he intended to do so or not, it is clear that he only intended to give his daughter a life estate, and that intention cannot be defeated unless it be incompatible with some fixed principle of law, but must prevail if it can be legally carried out.

But there is a further reason which is opposed to the charge of the court. The term *merger* necessarily presupposes the previous

[Magruder and Nichols *v.* Stewart's Administrators.]

existence of the particular estate which is merged. Hence it is said that there is no merger when both estates are created by the same deed, because this would be to avoid one or the other at the instant of its creation, and it could not therefore be the coincidence of a greater and less estate in the same person. Fearne on Remainders, 499—502. It is equally fair to reason that a merger does not take place when both estates are to spring into legal existence by the same event, as for example, by the death of the original holder. The force of the rule may be illustrated by the case before us.

Brocus by his will gave his daughter, who was his only child, a life estate in the negroes. The will took effect at his death; at his death also, she became his heir, and then her right as such accrued. If both estates existed, their existence began at the same instant; and at the same instant, also, the lesser was merged in the greater. This cannot be, for if the life estate was merged, it was at the moment of its creation, and it never had a legal existence; the will, therefore, as to that estate, was void. It would be giving but a momentary existence at best to the life estate, merely that the law in its omnipotence might destroy it, and thus the law of merger would be made to defeat the intention of the testator. If Mrs. Tabor had outlived her children, then she would have held the negroes absolutely, because of the failure of other heirs; but because a contingency might have arisen, on the happening of which her right would have been absolute, this is not to be regarded as sufficient to defeat the will. This is only a circumstance which might defeat the limitation over, and the rule is that a limitation that is good at the testator's death, by being afterwards defeated, does not enlarge the life estate. Lenoir *v.* Sylvester, 1 Bailey's Rep. 632. Nor is a life estate enlarged, when by possibility the remainder may take effect. As in the case cited, a life estate was given in negroes, and they were afterwards to be emancipated, but a statute intervened, which prohibited the emancipation, and still the life estate was not enlarged. For these reasons we think the charge given was erroneous. Was that which was asked of the court proper?

It is a general rule that the statute of limitations does not begin to run before a right of action exists, for it is generally considered

to be a mere bar to the remedy.    Mrs. Tabor having a life estate in the negroes, had the right of possession during her life.    Her right was not adverse to that of the defendants, and having power legally to dispose of her life estate, the possession of her vendee was not adverse during her life.    By her death, the right of the plaintiffs attached, and then, but not until then, their right of action accrued.    Although they had a vested remainder, it was only vested in interest, and not in possession.    Her possession was altogether compatible with their interest, but it was not their possession, hence we find that the books hold that the statute does not begin to run against the remainder man, until the termination of the particular estate, and the reason of the rule applies to personal as well as to real property.

The holder of a particular estate is bound to protect the interest of the remainder man, and if he refuse or neglect to do so, resort may be had to a court of chancery to compel him.    In this light, he may be justly regarded as the trustee for the remainder man, and until he claimed to hold by adverse title, the statute would not run.    Nothing appears in this case to show that the defendants' intestate did not acquiesce in the title of the plaintiffs, up to the time of Mrs. Tabor's death, and as the suit was brought within six years after that happened, the statute of limitations constitutes no bar to the plaintiffs' right of recovery.

Another ground taken in the argument at bar is, that the court erred in refusing to charge the jury that if the right of action accrued during coverture, the suit was properly brought in the names of the husbands alone ; and also in charging that if the right of action so accrued, the wives should have been joined in the action.    This question may be elucidated by a few general principles.    When the cause of action would survive to the wife, she must be joined; when it does not survive, she need not be joined, and that which the husband may discharge alone, or of which he may dispose for his own use, in such cases he may sue alone.    It has been decided by this court, that the husband acquires by marriage an absolute right to all the personal property of the wife, and may dispose of the same.    Cable *v.* Martin & Bell, 1 Howard's Rep. 558.    Lowry *v.* Huston, 3 id. 394.    The inevitable consequence is, that he may recover it in his own name.    Where the

[Magruder and Nichols *v.* Stewart's Administrators.]

law transfers the property to the husband, the wife's interest ceases, and the husband must sue alone, or at least, he certainly may do so.   1 Chitty, 83.   It would be otherwise if the wife had a continuing interest.

The court also charged the jury that if William and Stephen Minor were interested in the gross estate of Brocus, they should have been made parties, and that they were so interested by a proper construction of the will.   This court on a former occasion decided, that they had no such interest as that here asserted for them, and we see no reason for changing that opinion.   See 2 Howard, 912.

These are the prominent points raised in the argument, and being decidedly with the plaintiffs, the judgment must be reversed. Several other questions were made on the application for a new trial, which need not now be noticed.